IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
WICHITA

|  |  |
|---|---|
| JERROD STOUT, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CENTRAL PLASTICS, INC.,<br><br>　　　　Defendant. | Case No.: 6:23-cv-01057-EFM-TJJ |

**JOINT MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF APPROVAL OF WAGE AND HOUR SETTLEMENT**

## I.　　INTRODUCTION

The Parties move the Court for an Order approving their settlement of Plaintiff Jerrod Stout, Opt-In Plaintiff Bryce Seymour, Opt-In Plaintiff Jesse Sykes, and Opt-In Plaintiff Rhonda Brunson's (collectively "Plaintiffs") claims brought pursuant to the Fair Labor Standards Act of 1938 ("FLSA") and the Kansas Wage Payment Act ("KWPA"). The Parties now seek the Court's approval of their settlement. The settlement resolves all Plaintiffs' wage & hour claims against Defendant. The Settlement Agreement and Release of Wage and Hour Claims ("Agreement") is submitted to chambers separately for *in camera* review.

In support of their joint motion, the Parties submit that the settlement reached resolves a bona fide dispute and that the terms of the settlement are fair and reasonable to all Parties. For the reasons set forth below, the Parties request that the Court grant their Joint Motion to Approve Wage and Hour Settlement and approve the Agreement.

Plaintiffs signed the agreement between April 15-17, 2024. Defendant signed the Agreement on April 25, 2024.

II.     **PLAINTIFFS' ALLEGATIONS AND DEFENDANT'S DEFENSES**

A.  **Plaintiffs' Allegations**

On April 17, 2023, Plaintiffs filed the above-captioned lawsuit.  Plaintiffs brought the following claims against Defendant Central Plastics, Inc. ("Central Plastics"): (1) Failure to pay minimum wage in Violation of FLSA; and (2) Failure to pay earned wages in violation of KWPA.

Plaintiffs claim that Defendant maintained a clock-in and clock-out rounding policy that is not neutral.  Plaintiffs claim Central Plastics underpaid them for the work they had performed by rounding the time between when they would clock in and the beginning of their respective shifts. Specifically, Plaintiffs allege that they had performed work between when they would clock in and the beginning of their respective shifts.

B.  **Defendant's Defenses**

Defendant denies Plaintiffs' allegations and asserts the following defenses:

i.      Plaintiffs have not suffered any damages.  Plaintiffs did not suffer any damages.  Plaintiffs were paid correctly.  Each shift at Central Plastics runs continuously to the shift before and after it.  Central Plastics maintained a policy that allowed employees to clock in prior to the beginning of their shifts, even if the employees did not perform any work.  However, because many of the machines in Central Plastics' facilities are occupied by employees from the prior shift, it is not possible for many employees to be able to work prior to the beginning of their assigned shift.  Central Plastics paid Plaintiffs the time for which they worked during their assigned shifts.

ii.     Plaintiffs' alleged damages, to the extent any exist, were caused in whole or in part by sources other than any alleged unlawful actions by Defendant.  If Plaintiffs had any damages, they were caused by Plaintiffs.  Central Plastics maintains a policy for requesting overtime.  This policy ensures that both Central Plastics and its employees can properly track any time worked beyond their regularly scheduled shifts.  Plaintiffs did not adhere to Central Plastics' overtime reporting policy.  Plaintiffs allege that Central Plastics' employees worked between when they clocked in and when their shift started.  Plaintiffs also allege that Central Plastics' employees' clock-in times were rounded to their shift start time even when they worked prior to

the beginning of their respective shifts.  Plaintiffs are now claiming they were incorrectly paid overtime, but part of their job was to ensure that they reported to Central Plastics any overtime they worked.  Any alleged damages should either be completely denied or apportioned to the evidence.

iii.    <u>Plaintiffs' alleged damages, to the extent any exist, are speculative and uncertain, and therefore, not compensable</u>.  No one knows how much time Plaintiffs worked between clocking in and the beginning of their shifts, therefore Plaintiffs' damages are speculative and uncertain.  Neither Plaintiffs nor Defendant kept track of time that Plaintiffs alleged they worked prior to the beginning of their shift unless they requested overtime pursuant to Central Plastics policies.

"There is little question that damages which are based on conjecture or speculation are not recoverable." *Meissner v. BF Labs, Inc*., No. 13-2617-RDR, 2014 U.S. Dist. LEXIS 77135, at \*5 (D. Kan. June 6, 2014).  In FLSA cases "where the employer's time records are inaccurate or incomplete," in order for a plaintiff's damages to be compensable and not deemed uncertain and speculative, a plaintiff must meet his or her burden by showing sufficient evidence to prove as a matter of just and reasonable inference "the amount and extent of the work" that he or she "in fact performed" for which he or she was improperly compensated.  *Robinson v. Food Serv. of Belton, Inc.,* 415 F. Supp. 2d 1227, 1229 (D. Kan. 2005).  Plaintiffs will not be able to meet this burden.

## III.    <u>ARGUMENT</u>

### A.    <u>The Legal Standard for FLSA Court Settlement Approval</u>

The legal standard for FLSA court settlement approval is outlined in *Murray v. US Foods,*

*Inc.*, No. 18-2614-DDC-TJJ, 2020 U.S. Dist. LEXIS 144259, at \*24-31 (D. Kan. Aug. 12, 2020):

When parties settle FLSA claims, they must present the settlement to the court to review and decide whether the settlement is fair and reasonable.  *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-22311-KHV, 2015 U.S. Dist. LEXIS 108821, at \*3 (D. Kan. Aug. 18, 2015).  "To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned." *Id.*  To approve an FLSA settlement, the court must decide whether: (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorneys' fees. *Id*, at \*5. . . .

Before approving an FLSA settlement, the parties must submit sufficient information for the court to conclude that a bona fide dispute exists.  *McCaffrey v.*

*Mortg. Sources, Corp.,* No. 08-2660-KHV, 2011 U.S. Dist. LEXIS 1096, at *4 (D. Kan. Jan. 5, 2011).  To satisfy this obligation, the parties must provide the court with: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id. . . .*

The court next considers whether the proposed settlement is a fair and equitable one.  "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.,* No. 14-cv-00219-KMT, 2014 U.S. Dist. LEXIS 122502, at *3 (D. Colo. Sept. 3, 2014). . . .

The FLSA requires the parties to a settlement agreement to include an award of reasonable attorney's fees and the costs of the action.

### B.    The Litigation Involves a Bona Fide Dispute

#### i.    A Description of the Nature of the Dispute

A bona fide dispute exists because the Parties genuinely disagree on the following items:

(1)  whether Defendant's employees were correctly paid for time they allegedly worked after clocking in for their respective shifts; and

(2)  whether Plaintiffs suffered any damages;

#### ii.    A Description of the Employer's Business and the Type of Work Performed by Plaintiffs

Central Plastics was incorporated in McPherson, Kansas, on March 29, 1968, as Central Plastics, Inc., by Robert L. Swick, Virgil E. Anderson, and Chester T. Houghton.  The current officers of Central Plastics are Dennis C. Houghton, Mark C. Houghton, and Kent J. Houghton. Central Plastics is a manufacturer that specializes in producing plastic extrusions.  Central Plastics provides its products to the fenestration, garage door, medical, and automotive industries throughout the United States.

Plaintiff Jerrod Stout worked for Central Plastics from February 15, 2021, until August 10, 2023.  He held the position of Material Handler.  As of May 5, 2023, he had been earning $20.00 per hour until he resigned from his employment with Central Plastics.  His duties included the safe and efficient operation of the forklift vehicle; loading and unloading of material to the lines and ensuring material is properly marked; supporting the production team with raw materials, pallets, spools; and performing other related work as instructed by supervisors.

Plaintiff Bryce Seymour worked for Central Plastics from April 27, 2015, until December 10, 2020.  He held the position of Line Prep.  He had been earning $18.50 per hour plus a $1.25 shift differential.  His duties included preparing and/or tending to plastic extrusion machinery including all downstream equipment (saws, autowinders, punches, cutters) that are required to meet the customers' needs.

Plaintiff Rhonda Brunson worked for Central Plastics from October 26, 2020, until November 17, 2021.  She held the position of Production Operator.  She had been earning $13.50 per hour plus a $1.25 shift differential.  Her duties included packaging materials, packaging product(s), cleaning work area, monitoring the product and equipment to ensure proper functioning, and abiding by safety standards.

Plaintiff Jesse Sykes worked for Central Plastics from November 18, 2020, until February 26, 2021.  He held the position of Production Operator.  He had been earning $12.75 per hour plus a $1.25 shift differential.  His duties were similar to those of Plaintiff Rhonda Brunson.

### iii.    Plaintiffs' Justifications for the Disputed Wages

Plaintiffs' justifications for the disputed wages are detailed in the section outlining Plaintiffs' allegations.

iv.    **Defendant's Reasons for Disputing Plaintiffs' Requested Wages**

Defendant's reasons for disputing Plaintiffs' requested wages are detailed in the section outlining Defendant's defenses.

C.    **The Settlement Agreement is Fair and Reasonable**

The Agreement is fair and reasonable because it provides adequate compensation to Plaintiffs and does not frustrate the FLSA policy rationales.  In the Agreement, Plaintiffs are adequately compensated because the Agreement takes into account the following items: (1) Plaintiffs' claims and justifications for the disputed wages (2) Defendant's defenses and reasons for disputing Plaintiffs' requested wages; and (3) the risk inherent in going to trial.

Plaintiffs and Defendant have engaged in extensive litigation in this case, including written discovery and the production of thousands of pages of documents.  This has enabled each Party to understand and assess the detail and substance of their respective claims and defenses.  Although the Parties did not participate in mediation, settlement negotiations continued throughout the pendency of the case.  During discovery, the Parties continued to negotiate and ultimately reached a mutually-beneficial settlement of all claims.  To avoid the uncertainty, risks, and expense of continued litigation, the Parties each decided to resolve the lawsuit according to the terms set forth in the Agreement submitted separately to chambers for *in camera* review.

All Parties were represented by counsel during the litigation and settlement negotiations. Based on their evaluation, Plaintiffs and their counsel have determined that the settlement is in the best interests of Plaintiffs.   Each individual Plaintiff has approved the settlement, including the individual allocations, the $100.00 service award to named Plaintiff Jerrod Stout, and the attorneys' fees & costs allocation.  Plaintiff Stout receives a $100.00 service award for making

multiple trips from McPherson, Kansas to Wichita, Kansas, to work with counsel on the case and written discovery and responses.

As with most cases alleging denial of compensation under the FLSA, this case involves serious questions of disputed fact and law which make the outcome of continued litigation uncertain. Further, the case also involves a claim for breach of the KWPA for which attorneys' fees are not recoverable. The settlement fairly compensates Plaintiffs for their alleged damages and obviates the risk of payment of Defendant's prevailing party costs if they are not successful.

### D.    The attorneys' fees outlined in the Agreement are reasonable

The Parties seek approval of the attorneys' fees outlined in the Agreement. Defendant and Plaintiffs agree that the payment of these attorneys' fees and expenses is fair and reasonable. Plaintiffs' counsel is not seeking any additional money from Plaintiffs' recovery. The amount of attorneys' fees requested by the Parties is 50% percent of the total settlement value. The court in *Enegren v. KC Lodge Ventures, LLC,* succinctly explains the Tenth Circuit's analysis to determine the reasonableness of attorneys' fees:

> To determine the fee award's reasonableness, "the Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Barbosa*, 2015 WL 4920292, at *7 (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988)) (first citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); then citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). This method calls on the court to calculate a lodestar amount, "which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Solis v. Top Brass, Inc.,* No. 14-cv-00219-KMT, 2014 U.S. Dist. LEXIS 122502, at *4 (D. Colo. Sept. 3, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citation omitted)); *see also Hobbs v. Tandem Envtl. Sols., Inc.*, No. 10-1204-KHV, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012). The hybrid approach also requires the court to consider the factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S. Ct. 939 (1989). Those factors are: (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the

fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Enegren v. KC Lodge Ventures, LLC,* 2019 U.S. Dist. LEXIS 177192, at \*25-27 (D. Kan. Oct. 11, 2019). Just as in *Enegren*, the settlement regarding attorneys' fees satisfies each of these factors. The Parties will address each factor.

### (1) Time and Labor Required

Plaintiffs' counsel litigated this case since April of 2023. Plaintiffs' counsel spent over 50 attorney hours and 43.7 paralegal hours working on the case. The tasks involved include: pre-litigation research; meetings with Plaintiff Stout; phone and Zoom meetings with all Plaintiffs; directing Interrogatories and Requests for Production of Documents to Defendant; preparing responses and answers to Defendant's Interrogatories and Requests for Production of Documents; reviewing and analyzing thousands of pages of documents produced by Defendant; computing damages (inputting data and running formulas); negotiating the Agreement; and reviewing and negotiating the contents of this Motion. Partner Sean McGivern billed 35.4 hours and has about sixteen (16) years' experience in employment law. Partner Don Peterson billed 3.4 hours and has about thirty-four (34) years' experience in employment law. Partner Nathan Elliot billed 12 hours and has about fourteen (14) years' experience in employment law.

A court calculates the lodestar by ascertaining the number of hours reasonably billed and then multiplies that figure by an appropriate hourly rate. The lodestar amount is $400/hour for attorneys x 50.8 hours = $20,230. Further, at $100 per hour for paralegal time, Plaintiffs have $4,370 in paralegal time in this case. The Parties are only requesting less than half of the lodestar

amount as attorneys fees & costs for Plaintiffs' counsel.  This factor favors court approval of the attorneys' fees.

### (2) Novelty and Difficulty of the Questions Presented

Wage and hour litigation involves a complex blend of statutes and regulations that require skilled and experienced counsel.  Additionally, this case is not just a normal wage and hour case claiming unpaid overtime premium.  This case involves Defendant's rounding policy, a narrow area of wage and hour litigation that requires significant statistical analysis by experts.  Caselaw is continuously evolving in this area.  This factor favors court approval of the attorneys' fees.

### (3) Skill Requisite to Perform the Legal Service Properly

Plaintiffs' counsel regularly handles labor and employment litigation.  Plaintiffs' counsel are knowledgeable about the FLSA's and the KWPA's requirements and how those issues are litigated.  They brought that skill and experience to bear as evidenced by the Agreement and this Motion.  The skill required for this case is higher than the typical FLSA case since this case involves statistical analysis of Defendant's rounding policies.  The skill required to litigate this case favors court approval of the attorneys' fees.

### (4) Preclusion of Other Employment

This lawsuit precluded Plaintiffs' counsel from taking on other work.  Plaintiffs' counsel spent 50.8 attorney hours and 43.7 paralegal hours on the matter.  They litigated this case for approximately one (1) year without any guarantee of recovery.  The Court should find that the time spent litigating this case demonstrates that the lawsuit precluded Plaintiffs' counsel from working on other matters.  This factor favors court approval of the attorneys' fees.

**(5) Customary Fee**

Even though the Tenth Circuit applies a hybrid approach to determine reasonableness of fees, the customary fee award is typically a percentage. See *Enegren v. KC Lodge Ventures, LLC,* No. 17-2285-DDC-GEB, 2019 U.S. Dist. LEXIS 177192, at *30 (D. Kan. Oct. 11, 2019). Fee awards in similar cases ranged from 4 percent to 58 percent and from a few thousand dollars to over five million dollars. *Id.* The requested attorneys' fees are 50% percent of the total settlement amount. This factor favors court approval of the attorneys' fees. Moreover, this should be viewed in light of the fact that Plaintiffs are each receiving approximately 86% of their best-day, double damages under the settlement.

**(6) Whether the Fee is Fixed or Contingent**

When considering the sixth *Johnson* factor, the Court asks whether a plaintiff agreed to a fixed or contingent fee because the percentage of the recovery agreed helps illuminate the attorneys' fee expectation when counsel accepted the case, even though such arrangements should not determine the court's decision. Here, Plaintiffs' counsel undertook this representation on a contingency fee basis. Had there been no recovery, Plaintiffs' counsel would not have received any fee. Without attorneys that were willing to accept the risk inherent in contingency fee arrangements, it is highly doubtful that Plaintiffs would have been able to assert their claims and would not have received a recovery. This factor favors court approval of the attorneys' fees.

**(7) Any Time Limitations Imposed**

Plaintiffs' counsel do not contend that Plaintiffs or this litigation imposed any unusual time limitations on them.

### (8) Amount Involved and the Results Obtained

Plaintiffs' counsel secured a favorable result for their clients. Plaintiffs were already compensated their normal hourly wage from Central Plastics. This is a good outcome for Plaintiffs. Furthermore, Defendant contested their liability, so the ultimate outcome of this litigation if it had not settled remained in doubt. Just like in *Enegren*, this settlement avoids the uncertainty and rigors of trial and produces a favorable, certain result for Plaintiffs. This factor favors court approval of the attorneys' fees.

### (9) Experience, Reputation, and Ability of the Attorneys

The Parties have already discussed the experience, reputation, and ability of Plaintiffs' counsel above. Plaintiffs' counsel have experience litigating employment cases. This factor favors approval of the attorneys' fees.

### (10)  Undesirability of the Case

This case was originally a contingency fee case. Contingency fee cases are inherently risky, and therefore undesirable, but the contingent fee arrangement will have already been considered. The attorneys' fees have now been negotiated and paid for by Defendant as part of the settlement as opposed to being a contingent fee case anymore. This factor is neutral.

### (11)  Nature and Length of the Professional Relationship with the Client

"The meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial." *Enegren v. KC Lodge Ventures, LLC*, No. 17-2285-DDC-GEB, 2019 U.S. Dist. LEXIS 177192, at *33 (D. Kan. Oct. 11, 2019).

### (12)  Awards in Similar Cases

The Parties request 50% percent of the total settlement to go to attorneys' fees. The attorneys' fees requested in this settlement are within the range of the attorneys' fees this Court has approved in other cases. This Court explained in *Payson v. Capital One Home Loans, LLC,* that the Court approved the attorneys' fees of 42.42% in a sealed settlement agreement for another case because defendants paid the attorneys' fees rather than it being merely a contingent fee arrangement. No. 07-CV-2282-DWB, 2009 U.S. Dist. LEXIS 25418, at *7 (D. Kan. Mar. 26, 2009). Just as in *Payson,* the Parties agree the attorneys' fees are reasonable and Defendant agrees to pay the requested attorneys' fees. In *Enegren v. KC Lodge Ventures, LLC,* the Court approved attorneys' fees of $120,000, which were 40 percent of the settlement. No. 17-2285-DDC-GEB, 2019 U.S. Dist. LEXIS 177192, at *33-35 (D. Kan. Oct. 11, 2019). In 2012, the court in *Rodriguez v. Skechers U.S.A., Inc.,* approved a $20,000 attorney fee award in a single-plaintiff wage and hour case, which was a 35 percent contingency case. No. 6:11-cv-1219-Orl-36GJK, 2012 U.S. Dist. LEXIS 18534, at *9-11 (M.D. Fla. Feb. 14, 2012). In 2015, the court in *Sanchez v JMP Ventures, L.L.C.*, approved $53,333, which represented one-third of the settlement. No. 13 Civ. 7264 (GWG), 2015 U.S. Dist. LEXIS 16026, at *18 (S.D.N.Y. Feb. 10, 2015). Moreover, this should be viewed in light of the fact that Plaintiffs are each receiving approximately 86% of their best-day, double damages under the settlement.

The attorneys' fees outlined in the Agreement are reasonable pursuant to the *Johnson* factors and lodestar amount.

For the reasons set forth herein, the Parties jointly respectfully request the Court approve the settlement of this case as set forth in the Agreement.

| | |
|---|---|
| /s/ Sean M. McGivern (w/ consent) | /s/ Alan L. Rupe |
| Donald N. Peterson, KS #13805 | Alan L. Rupe, KS #08914 |
| Sean M. McGivern, KS #22923 | LEWIS BRISBOIS BISGAARD & SMITH LLP |
| Nathan R. Elliot, KS #24657 | 1605 North Waterfront Parkway, Suite 150 |
| Graybill & Hazlewood, LLC | Wichita, KS 67206 |
| 218 N Mosley Street | Telephone:  (316) 609-7900 |
| Wichita, KS 67202 | Facsimile:   (316) 462-5746 |
| Telephone:  (316) 266-4058 | alan.rupe@lewisbrisbois.com |
| Facsimile:   (316) 462-5566 | |
| don@graybillhazlewood.com | *Attorneys for Defendant Central Plastics, Inc.* |
| sean@graybillhazlewood.com | |
| nathan@graybillhazlewood.com | |

*Attorneys for Plaintiff Jerrod Stout,*
*on behalf of himself and all others*
*similarly situated*

## CERTIFICATE OF SERVICE

I certify that on April 25, 2024, I filed the above Joint Motion and Memorandum of Law in Support of Approval of Wage and Hour Settlement with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all attorneys of record.

/s/ Alan L. Rupe
Alan L. Rupe

139537478.1                          13