**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JERROD STOUT, on behalf of himself and all others similarly situated,

Plaintiff,

v.

CENTRAL PLASTICS, INC.,

Defendant.

Case No.: 6:23-cv-01057-TJJ

**ORDER**

This matter is before the Court on the Parties' Joint Motion and Memorandum of Law in Support of Approval of Wage and Hour Settlement (ECF No. 44). After review of the Parties' joint briefing and *in camera* review of the settlement agreement of the Parties, the Court grants the parties' motion.

## I. Legal Standard

When parties reach a settlement in an FLSA case, they must present the settlement to the court for approval.[1] "To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned."[2] The court must consider the following factors: "(1) the litigation involves a bona fide

[1] *Flerlage v. US Foods, Inc.*, No. 18-2614-DDC-TJJ, 2020 WL 4673155, at *9 (D. Kan. Aug. 12, 2020).

[2] *Id.* (citing *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015)).

dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorneys' fees."[3]

## II. Bona Fide Dispute

"Before approving an FLSA settlement, the parties must submit sufficient information for the court to conclude that a bona fide dispute exists."[4] The parties must provide the following information:

> (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.[5]

The Parties have provided sufficient information for the Court to determine whether a bona fide dispute exists. The Parties disagree on whether Defendant maintained a neutral rounding policy whereby its employees were correctly paid for time they allegedly worked after clocking in and whether Defendant is an "employer" under the Kansas Wage Payment Action ("KWPA"). The parties provided a description of Defendant's business as a company that employed Plaintiffs and the job descriptions and wages of the named Plaintiffs.

Further, Defendant provided numerous reasons for disputing the employees' right to overtime. Those reasons include: (1) Defendant maintained a policy that allowed employees to clock in prior to the beginning of their shifts, even if the employees did not perform any work, but then only paid Plaintiffs for the time they actually worked; (2) Plaintiffs did not adhere to

---

[3] *Flerlage*, 2020 WL 4673155, at *9.

[4] *Id.*

[5] *Id.*

Defendant's overtime reporting policy; (3) Plaintiffs were responsible for calculating their overtime, so if they were incorrectly paid for overtime, that is their responsibility; and (4) Plaintiffs hours worked between clocking in and the beginning of their shifts is unknown so their damages are speculative and uncertain.

Plaintiffs' justifications for the disputed wages are that Defendant maintained a clock-in and clock-out policy that is not neutral. Plaintiffs claim Defendant underpaid them for the work they had performed by rounding the time between when they would clock in and the beginning of their respective shifts, during which they performed work.

Based on their submissions, the Court finds the parties have made a sufficient showing that this litigation involves a bona fide dispute.

## III. Fair and Equitable Settlement

For an FLSA settlement to be fair and reasonable, it must "provide adequate compensation to the employee and must not frustrate the FLSA policy rationales."[6] Courts consider the fairness factors applied in the context of class action settlements under Federal Rule of Civil Procedure 23(e).[7] The court must consider the following factors:

> (i) whether the proposed settlement was fairly and honestly negotiated, (ii) whether serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt, (iii) whether the value of an immediate recovery outweighs the mere possibility of future relief after what could be protracted and expensive litigation, and (iv) the judgment of the parties that the settlement is fair and reasonable.[8]

---

[6] *Flerlage*, 2020 WL 4673155, at *9.

[7] *Craven v. McCaffree-Short Title Co., Inc.*, No. 2:21-CV-02003-TC-GEB, 2021 WL 5505705, at *2 (D. Kan. Nov. 24, 2021).

[8] *Id*.

The parties have sufficiently established that the settlement terms are fair and equitable. The parties have stated the primary considerations in reaching this proposed settlement were (1) Plaintiffs' claims and justifications for the disputed wages, (2) Defendant's defenses and reasons for disputing Plaintiffs' requested wages, and (3) the risk inherent in going to trial. The parties have displayed a thorough understanding of the claims, defenses, and the uncertainty/risk of continuing litigation and going to trial in this case.

Further, all parties were represented by counsel during the litigation and settlement negotiations. Based on their evaluation, Plaintiffs and their counsel have determined that the settlement is in the best interests of Plaintiffs, and each Plaintiff has approved the settlement, including the individual allocations. Defendant and its counsel likewise have determined the settlement is in Defendant's best interest. Finally, as discussed above, a bona fide dispute exists which involves serious questions of disputed fact and law.

Having reviewed the factors pursuant to Fed. R. Civ. P. 23(e) that apply to proposed settlements of this nature and based upon the representations of the Parties and counsel in their briefing, the Court finds the settlement is fair and equitable to all Parties.

## IV. Attorneys' Fees

To evaluate the reasonableness of attorneys' fees, the Court "applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar."[9] "This method calls on the court to calculate a lodestar amount, 'which represents

[9] *Barbosa*, 2015 WL 4920292, at *9.

the number of hours reasonably expended multiplied by a reasonable hourly rate.'"[10] Courts must also consider the following factors:

> (1) Time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

The Court analyzes these factors below.

*A. Time and Labor Required*

The lodestar is ascertained by the number of hours reasonably billed multiplied by an appropriate hourly rate. The parties have been litigating this case since April of 2023. Plaintiffs' counsel spent 50.8 attorney hours and 43.7 paralegal hours working on the case. Plaintiffs have stated this work included the following: pre-litigation research; meetings with Plaintiff Stout; phone and Zoom meetings with all Plaintiffs; directing interrogatories and requests for production of documents to Defendant; preparing responses and answers to Defendant's Interrogatories and Request for Production of Documents; reviewing and analyzing thousands of pages of documents produced by Defendant; computing damages (inputting data and running formulas); negotiating the Agreement; and reviewing and negotiating the contents of this motion. Given the length of time the parties have been litigating this case and the extensive list of work Plaintiffs' counsel have put into this case, the Court finds 50.8 attorney hours and 43.7 paralegal hours are reasonable for this case.

---

[10] *Enegren v. KC Lodge Ventures LLC*, No. 17-2285-DDC-GEB, 2019 WL 5102177, at *9 (D. Kan. Oct. 11, 2019) (citing *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *4 (D. Colo. Sept. 3, 2014)).

Partner Sean McGivern billed 35.4 hours and has about sixteen years' experience in employment law. Partner Don Peterson billed 3.4 hours and has about thirty-four years' experience in employment law. Partner Nathan Elliot billed 12 hours and has about fourteen years' experience in employment law. Plaintiffs' counsel argues the reasonable rate for attorneys' fees is $400/hour. Because the partners working on this case have a combined 64 years of experience in employment law and this Court has found $400 per hour to be within the range of reasonable rates for experienced attorneys, the Court finds this hourly rate is reasonable.[11]

The lodestar amount is $400 per hour for attorneys multiplied by 50.8 hours, which equals $20,230. At $100 per hour for paralegal time and costs, Plaintiffs have $4,370 in paralegal time in this case. Plaintiffs' attorneys are requesting less than half of the lodestar amount as attorneys' fees and costs. Therefore, the Court finds this factor favors approval of the attorneys' fees.

*B. Novelty and Difficulty of the Questions Presented*

Plaintiffs assert that wage and hour litigation involves a complex blend of statutes and regulations that require skilled and experienced counsel. This case involves Defendant's rounding policy, which Plaintiffs argue is a narrow area of wage and hour litigation where caselaw is continuously evolving and requires significant statistical analysis by experts. The Court agrees and finds this factor favors approval of the attorneys' fees.

*C. Skill Requisite to Perform the Legal Service Properly*

Plaintiffs' counsel in this case regularly handles FLSA and KWPA cases. As previously stated, the skill required for this case is higher than the typical FLSA case due to Defendant's rounding policies at issue, and Plaintiffs' counsel brought their skill and experience to bear.

---

[11] *See Barbosa*, 2015 WL 4920292, at *10 (finding a $425/hour rate reasonable for lead attorney); *Craven*, 2021 WL 5505705, at *3 (finding a $90-470/hour range of rates reasonable).

Therefore, the Court finds that the skill required to litigate this case favors court approval of the attorneys' fees.

*D. Preclusion of Other Employment*

Plaintiffs' counsel litigated this case for one year and spent 50.8 attorney hours and 43.7 paralegal hours with no guarantee of recovery. The Court finds that the time spent litigating this case necessarily precluded Plaintiffs' counsel from working on other matters. Therefore, this factor favors approval of the attorneys' fees.

*E. Customary Fee*

"While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically a percentage of the fund."[12] Fee awards in FLSA cases have ranged from 4%-58% of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars.[13] Plaintiffs' counsel is requesting attorneys' fees which are 50% of the total settlement amount. Plaintiffs argue the Court should find this factor favors approval because it is within the range of fees approved by this court and Plaintiffs are each receiving approximately 86% of their best-day, double damages under the settlement. The Court agrees and finds this factor favors approval of the attorneys' fees.

*F. Whether the Fee is Fixed or Contingent*

This court must consider "whether plaintiff agreed to a fixed or contingent fee because the percentage of the recovery agreed helps illuminate the attorneys' fee expectations when counsel accepted the case, even though '[s]uch arrangement should not determine the court's decision.'"[14]

---

[12] *Barbosa*, 2015 WL 4920292, at *11.

[13] *Id.*

[14] *Enegren*, 2019 WL 5102177, at *11.

Plaintiffs' counsel undertook this representation on a contingency fee basis. Plaintiffs' counsel argues that without attorneys that were willing to accept the risk inherent in contingency fee arrangements, it is highly doubtful Plaintiffs would have been able to assert their claims and receive a recovery in this case. The Court agrees and finds this factor favors court approval of the attorneys' fees.

*G. Any Time Limitations Imposed*

Plaintiffs' counsel does not contend that Plaintiffs or this litigation imposed any unusual time limitations on them, so this factor does not favor court approval of the attorneys' fees.

*H. Amount Involved and the Results Obtained*

Plaintiffs' counsel secured a favorable result for their clients. As stated above, each individual Plaintiff is receiving approximately 86 percent of their best-day, double damages. As stated in their motion, this settlement avoids the uncertainty and rigors of trial and produces a favorable, certain result for Plaintiffs. Therefore, this factor favors approval of the attorneys' fees.

*I. Experience, Reputation, and Ability of the Attorneys*

As stated above, Partner Sean McGivern has about sixteen years' experience in employment law, Partner Don Peterson has about thirty-four years' experience in employment law, and Partner Nathan Elliot has about fourteen years' experience in employment law. Counsel has a collective 64 years of experience practicing employment law which favors court approval of the attorneys' fees.

*J. Undesirability of the Case*

Plaintiffs acknowledge this factor is neutral. The only aspect of this case that is undesirable to Plaintiffs' counsel is the contingency fee, which has already been addressed above. Therefore, the Court weighs this factor neutrally.

*K. Nature and length of the Professional Relationship with the Client*

Plaintiffs acknowledge this factor only to point out that "[t]he meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial."[15] Therefore, the Court weighs this factor neutrally.

*L. Awards in Similar Cases*

The parties request 50% of the total settlement be allocated as attorneys' fees. The parties cite multiple cases where courts in this district have approved settlements representing 40-42% of the total settlement amount.[16] However, in more recent cases, this court has approved attorneys' fees that represented 44-58% of the total settlement amount.[17] Plaintiffs' request is within the range of attorneys' fees approved by this court, and as stated previously, Plaintiffs' counsel has a wealth of experience and is only requesting less than half of the lodestar amount as attorneys' fees and costs. Therefore, the Court finds this factor favors approval of the attorneys' fees.

Using the hybrid approach combining the percentage fee method and factors used to calculate the lodestar and analyzing both, the Court finds the attorneys' fee award is reasonable.

IT IS THEREFORE ORDERED the Parties' Joint Motion and Memorandum of Law in Support of Approval of Wage and Hour Settlement (ECF No. 44) is GRANTED.

---

[15] *Barbosa*, 2015 WL 4920292, at *12.

[16] *See Enegren*, 2019 WL 5102177, at *12 (D. Kan. Oct. 11, 2019) (approving attorneys' fees of 40 percent of the total settlement); *Payson v. Capital One Home Loans, LLC*, No. 07-CV-2282-DWB, 2009 U.S. Dist. LEXIS 25418, at *7 (D. Kan. Mar. 26, 2009) (approving attorneys' fees of 42.42 percent of the total settlement).

[17] *Craven*, 2021 WL 5505705, at *3 (approving attorneys' fees of 44 percent of the total settlement); *Mpia v. Healthmate Int'l, LLC*, No. 19-CV-02276-JAR, 2021 WL 2805374, at *3 (D. Kan. July 6, 2021) (approving attorneys' fees of 58.8 percent of the total settlement).

IT IS SO ORDERED.

Dated May 22, 2024, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge